IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| IN THE MATTER OF: ) | CASE NO. BK10-82436-TJM |
| ) | (Lead case) |
| PROFESSIONAL VETERINARY ) | |
| PRODUCTS, LTD., a Nebraska ) | CH. 11 |
| Corporation, ) | |
| ) | |
| Debtor(s). ) | |
| IN THE MATTER OF: ) | CASE NO. BK10-82438-TJM |
| ) | |
| EXACT LOGISTICS, LLC, ) | |
| ) | |
| Debtor(s). ) | |
| IN THE MATTER OF: ) | CASE NO. BK10-82437-TJM |
| ) | |
| PRO CONN, LLC, ) | |
| ) | |
| Debtor(s). ) | |

ORDER

This matter is before the court regarding Fil. #1047, Objection to Confirmation of Plan, filed by Agri-Laboratories. Robert Bothe represents the debtors and Joel Carney represents Agri-Laboratories.

In this Chapter 11 case, a creditor, Agri-Laboratories, Ltd. ("Agri-Labs") has objected to its treatment in the First Amended Joint Plan of Liquidation filed by the debtors and the Official Committee of Unsecured Creditors at Fil. #1024. Counsel for the parties agreed to file a stipulation of facts and submit briefs and reply briefs regarding the objection. On December 12, 2011, a hearing was held on the confirmation of the plan and the court was informed that counsel for Agri-Labs had agreed that the plan could be confirmed while its objection remained pending. The court was informed that there were sufficient funds available to satisfy the claim no matter which way the court decided on the objection. A proposed confirmation order was then submitted and was entered on December 13, 2011.

On October 1, 1998, PVP and Agri-Labs entered into a distribution agreement, wherein PVP was appointed as distributor of products sold by Agri-Labs. On December 17, 1998, PVP entered into several agreements to consummate the purchase of 15,000 shares of Class A common stock of Agri-Labs for the purchase price of $143,850.00, which it paid. The agreements provided that should the shares be redeemed by Agri-Labs, the purchase price of such redemption should equal the book value of the shares.

On December 19, 1998, PVP and Agri-Labs also entered into a pledge agreement wherein PVP granted to Agri-Labs "a security interest in [the shares]" to secure any obligations owing from PVP to Agri-Labs. Agri-Labs took and has continuously maintained possession of all 15,000 shares owned by PVP. The Pledge Agreement provides, as follows:

> "6. Agreed Upon Value. Because the Shares are not publicly traded, the parties agree that in the event of a private sale of the Shares as a result of an Event of Default not being cured as specified above, a commercially reasonably [sic] value of the Shares shall be the Shares' then current book value as of the last day of the month preceding the date of sale."

The book value of the shares on October 31, 2011, was $495,900.

On the petition date, August 20, 2010, PVP owed Agri-Labs $544,066.15 (without including setoff of amounts owed from Agri-Labs to PVP).

Agri-Labs enters into one-year distribution agreements with its distributors which are renewed on an annual basis. Commencing December 1998 and continuing each year through January 1, 2010, PVP and Agri-Labs entered into a one-year distribution agreement. Section 20 of the most recent distribution agreement provides that "PVP may from time to time become entitled to certain special promotions, sales spiffs, promotional allowances, member promotional allowances, sales rebates and similar incentives from Agri-Labs based on the sale of Products and/or based upon other performance factors (the 'Promotional Allowances')." The parties have stipulated that PVP accrued $214,215.78 in promotional allowances under the distribution agreement and that such accrual occurred prior to any breach or termination of the distribution agreement.

Under the First Amended Plan, PVP proposes to satisfy Agri-Labs' secured claim by surrendering the shares to Agri-Labs at book value, and then, if there remains some amount of debt as an unsecured claim, to offset that debt to the extent of the promotional allowances that accrued prior to the breach.

Agri-Labs objects to such treatment. It takes the position that under the various documents executed by the parties, it has the right to repurchase the shares, but not the obligation to do so. In other words, the agreements provide that before PVP can sell the shares to any other party, they must first be offered to Agri-Labs which may or may not exercise its right to purchase. In addition, Agri-Labs takes the position that the book value of the shares does not represent actual value of the shares except in the limited case if it opted to exercise its right to purchase.

With regard to the promotional allowances, Agri-Labs takes the position that its contractual arrangements allow it to suspend or eliminate any promotional allowance that has not been paid when a breach of any portion of the agreement has occurred. Agri-Labs claims that it has suspended or eliminated the unpaid amounts and therefore they cannot be set off against the debt owed by PVP.

The debtor's authority for its right to surrender the shares is Bankruptcy Code § 1129(b)(2)(A)(iii). That section states in part that the court shall confirm a plan, if all other elements of the confirmation standards are met, if the plan does not discriminate unfairly, and is fair and equitable with respect to each class of claims or interest that is impaired under and has not accepted the plan. It further provides that the plan is fair and equitable if it provides for the realization by holders of secured claims the indubitable equivalent of such claims.

In other words, under the Chapter 11 confirmation standards, a secured claim holder can be forced to accept its collateral as part of a plan confirmation process. However, the claim, upon the surrender of the collateral, will only be reduced by the amount of the value of the collateral. Here, PVP proposes that the agreed-upon book value formula can be used by it to reduce the amount of the claim upon surrender of the collateral.

I disagree. The agreement between the parties uses the book value formula only for the limited purpose of determining the value of the shares as between PVP and Agri-Labs if Agri-Labs exercises its option to purchase the shares. As Agri-Labs argues, there is nothing in the agreement that permits PVP to surrender the shares over the objection of Agri-Labs and use book value to reduce Agri-Labs' claim.

PVP is correct, as indicated, that it has statutory authority to surrender the shares, but that authority requires the debtor to provide the creditor with the indubitable equivalent of its claim. To determinate indubitable equivalence, one must determine the value of the shares. Here, there is no evidence of the value of the shares, other than for the limited purpose referred to above. The agreement does provide for a fallback procedure if Agri-Labs declines to exercise its option to purchase the shares. Under that circumstance, the debtor is permitted to go into the open market and attempt to sell the shares. There is no evidence in this record that the debtor has attempted to do so or that, if it did attempt to do so, the shares would be marketable since they are generally tied to the distribution agreement and Agri-Labs is not required by any part of the agreement to enter into another distribution agreement with a party that would purchase the shares on the open market.

Although Agri-Labs holds a secured claim equal to the value of its collateral (the shares), because there is no evidence of value, its claim is unsecured for the purpose of distribution of property of the estate.

The second part of the treatment of the claim of Agri-Labs is to set off the accrued promotional allowances against the claim. Agri-Labs basically says that there are no promotional allowances available for such setoff because its contractual arrangement permits it to suspend or eliminate unpaid promotional allowances and it has done so. It claims that a provision allowing it to eliminate or suspend the promotional allowances is simply a liquidated damages clause. Because it would be quite difficult at the beginning of a contract to determine when a breach would occur or the actual amount of damages that would result from such a breach, Agri-Labs says it was reasonable to provide such a clause and such authority.

On the other hand, PVP states that the provision allowing suspension or elimination of the promotional allowances is a penalty to discourage a future breach.

The parties have agreed that Missouri law controls the interpretation of the agreements between the parties. Several Missouri cases discuss liquidated damages clauses versus penalty clauses. A short survey follows.

In <u>Mayer Hoffman McCann, P.C. v. Barton</u>, 614 F.3d 893 (8th Cir. 2010), the court dealt with the breach of restrictive covenants in an employment contract. In addressing the enforceability of a liquidated damages clause, the court noted:

In Missouri,

> [t]he general rule is liquidated damages clauses are valid and enforceable, while penalty clauses are invalid. Liquidated damages are a measure of compensation which, at the time of contracting, the parties agree shall represent damages in case of breach. Penalty clauses, on the other hand, are a punishment for breach.

Valentine's Inc. v. Ngo, 251 S.W.3d 352, 354 (Mo. App. Ct. 2008) (quotation omitted). Thus, the issue here is whether the parties intended the provision to be a form of recoverable compensation – liquidated damages – or an unenforceable penalty provision meant to compel performance. In order to distinguish between the two, we ask whether: "(1) the amount fixed as damages [is] a reasonable forecast for the harm caused by the breach; and (2) the harm [is] of a kind difficult to accurately estimate." Id. (quotation omitted). If both requirements are met, the liquidated damages provision is valid. Id.

614 F.3d at 909-10.

In Mihlfeld & Assoc., Inc. v. Bishop & Bishop, L.L.C., 295 S.W.3d 163 (Mo. Ct. App. 2009), the court considered the non-competition provisions in an employment contract and stated:

> When a liquidated damages clause represents a reasonable forecast of harm caused by a breach of contract, and the harm is of the type that is difficult to accurately estimate, courts will enforce the liquidated damages provision. Kuczynski v. Intensive Maint. Care, Inc., 48 S.W.3d 55, 57 (Mo. Ct. App. 2001). A plaintiff must show at least some actual harm or damage caused by a breach, however, before a liquidated damages clause can be triggered. Grand Bissell Towers, Inc. v. Joan Gagnon Enters., Inc., 657 S.W.2d 378, 379 (Mo. Ct. App. 1983).

295 S.W.3d at 172.

> Simply being in violation of the employment agreement, however, is not an automatic trigger to enforcement of a liquidated damages provision. It is well settled that before liability to pay liquidated damages can attach, the party in default must have been guilty of a substantial breach of his agreement which has resulted in more than mere nominal damage to the other party. See Werner v. Finley, 144 Mo. Ct. App. 554, 129 S.W. 73, 75 (1910).

Id. at 173.

> "'Liquidated and actual damages generally may not be awarded as compensation for the same injury.'" Trapp v. Barley, 897 S.W.2d 159, 165 (Mo Ct. App. 1995) (quoting Warstler v. Cibrian, 859 S.W.2d, 162, 165 (Mo Ct. App. 1993)) This rule has developed in order to avoid duplicating damages. Id. at 165-66. The employment agreement here specifically states that liquidated damages are the sole measure of damages in the event of a breach because "the remedy at law

would be non-existent and/or inadequate." Although it is appropriate for Appellants to proceed under multiple theories, they are not entitled to duplicate awards of damages for the same injury.

Id. at 178.

In City of Richmond Heights v. Waite, 280 S.W.3d 770 (Mo. Ct. App. 2009), the issue was eminent domain and the city's offer to purchase real property. In interpreting the liquidated damages clause in the offer, the court said:

> Central to our analysis is the accepted principle of law that liquidated damages clauses are valid and enforceable, whereas penalty clauses are not. Diffley v. Royal Papers, Inc., 948 S.W.2d 244, 246 (Mo. Ct. App. 1997). "Liquidated damages provisions are frequently utilized in real estate contracts because actual damages are often 'uncertain in amount and difficult to ascertain or prove.'" Warstler v. Cibrian, 859 S.W.2d 162, 165 (Mo. Ct. App. 1993) (internal citation omitted). A penalty provision specifies a punishment for default, while liquidated damages are provided as a measure of compensation that, at the time of contracting, the parties agree will represent damages in the event of a breach. Diffley, 948 S.W.2d at 246. For a damage clause to be valid as setting liquidated damages, the amount fixed as damages must be a reasonable prediction for the harm caused by the breach and the harms must be of a kind difficult to estimate accurately. Id. In determining whether an agreement sets forth liquidated damages or a penalty, this Court looks to the intent of the parties as determined from the contract as a whole. Id. at 246-47. The provision must be fixed on the basis of compensation, or else it is construed as a penalty clause primarily designed to compel performance. Id. at 247.

280 S.W.3d at 776.

Finally, in Frank v. Sandy Rothschild & Assoc., Inc., 4 S.W.3d 602 (Mo. Ct. App. 1999), the court interpreted a liquidated damages provision in a real property lease:

> Tenant challenges the trial court's award of damages, which included a sum representing the unpaid final four months' rent that, pursuant to a clause in the lease, Landlord had agreed to abate if Tenant was not in default. The clause at issue states, "If Tenant is not in default hereunder, Landlord agrees to fully abate the Base Rent for the last four (4) months of the term hereof." Tenant characterizes this provision as an unenforceable penalty clause. We disagree.
> . . .
> Here, the clause at issue neither attempted to estimate damages nor exact a penalty for breach. Rather, the clause simply rewards Tenant for prompt payment. We fail to see how this provision could be characterized as an unenforceable penalty clause under the circumstances.

4 S.W.3d at 605-06.

Under Missouri law, it appears that a provision allowing suspension or elimination of the

promotional allowances is a penalty. First, there is no amount stated. There was, at the time the agreements were executed, no way to determine the amount of promotional allowances that would be affected by the provision. Because there is no amount stated, there is no ability of either party or the court, to determine if the provision was reasonable. The actual damages caused by the breach could have been quite small versus the unpaid amount of promotional allowances, or could have been quite large versus the unpaid amount of the promotional allowances. The provision provides no certainty for either party.

Finally, even if the provision is deemed to be a liquidated damages clause, Agri-Labs cannot keep the promotional allowances and legally attempt to enforce a claim for the full amount of the actual damages resulting from the failure to pay invoices. As cited above, Trapp v. Barley, 897 S.W.2d 159, 165 (Mo. Ct. App. 1995), provides that liquidated and actual damages generally may not be awarded as compensation for the same injury. So, even if it is a liquidated damages clause, the amount must be used to set off against the actual damages outstanding as a result of the breach.

IT IS ORDERED that Fil. #1047, Objection to Confirmation of Plan, is granted with regard to the value of the shares and is denied with regard to the promotional allowances.

DATED:      December 16, 2011

BY THE COURT:

/s/ Timothy J. Mahoney
United States Bankruptcy Judge

Notice given by the Court to:
   Robert J. Bothe
   *Joel Carney
   U.S. Trustee

* Movant is responsible for giving notice of this order to other parties if required by rule or statute.